Chuck KOELKER, et al.

v.

The MAYOR AND CITY COUNCIL OF
CUMBERLAND (MARYLAND).

Civil No. JFM–07–2706.

United States District Court,
D. Maryland.

Feb. 24, 2009.

Francis J. Collins, Kahn Smith and Collins PA, Baltimore, MD, for Plaintiffs.

Jefferson L. Blomquist, Funk and Bolton PA, Baltimore, MD, Michael Scott Cohen, Law Office of Michael Scott Cohen LLC, Cumberland, MD, for Defendant.

## OPINION

**J. FREDERICK MOTZ, District Judge.**

On October 5, 2007, current and former members of the Cumberland Fire Department ("plaintiffs") filed this action against the Mayor and City Council of Cumberland ("defendant") for alleged violations of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Act. Plaintiffs request declaratory, injunctive, and monetary relief for defendant's alleged failure to pay wages for all hours worked and time-and-a-half for overtime wages.[1]

Plaintiffs and defendant have filed cross-motions for summary judgment. After defendant filed its response to plaintiffs' summary judgment motion and a cross-motion for summary judgment, plaintiffs filed a motion for leave to amend their complaint.

### I.

The facts in this case are largely undisputed. (*See* Pls.' S.J. Reply 2.) Plaintiffs

are firefighters currently or formerly employed by the Fire Department of the City of Cumberland, Maryland. Defendant, the Mayor and City Council of Cumberland, operates the Fire Department.

The employment terms for the firefighters are established in a collective bargaining agreement. The International Association of Firefighters, AFL–CIO, Local # 1715 ("the Union"), is the exclusive bargaining agent for the plaintiff firefighters. (Def.'s Ex. 11, at 1, 3.) On July 15, 2003, defendant and the Union executed a collective bargaining agreement effective from July 1, 2002, through June 30, 2006. (*Id.* at 31.) A largely identical successor agreement was executed on August 8, 2006, for the employment period of July 1, 2006, through June 30, 2007. (Def.'s Ex. 12, at 32.) The current agreement was executed on April 15, 2008, to cover the period July 1, 2007, through June 30, 2010. (Def.'s Ex. 18, at 1.)

Under the Agreements, firefighters work one twenty-four hour "shift" followed by forty-eight hours off. After a certain number of shifts—eight under the 2003 Agreement and six under the 2006 and 2008 Agreements—the employee has one shift off, known as a "Kelly" day. For other members of the Fire Department, the work week is established by the Chief but "shall not exceed an average of 48 hours per week." (Def.'s Ex. 11, at 21; Def.'s Ex. 12, at 22; Def.'s Ex. 18, at 28.) For purposes of this summary judgment motion, the parties by agreement only present evidence regarding hours worked as to two firefighter plaintiffs, Chuck Koelker and Steven Grogg.

---

1. In their reply memorandum, plaintiffs allege violations of the record-keeping requirements of the FLSA and the notice and record-keeping requirements of the Maryland Wage and Hour Law. (Pls.' Reply Mem. in Supp. of Pls.' Mot. for Summ. J. and in Opp. to Def.'s Cross–Mot. for Summ. J. ["Pls.' S.J. Reply"] 12.) As these allegations appear for the first time in plaintiffs' reply memorandum, I do not consider them.

Each firefighter is paid a non-fluctuating amount biweekly equal to 1/26th of their annual base salary. The "Salary and Wage Rates" Article in the 2003 and 2006 Agreements lists yearly salaries for pay grades 1 through 18. (Def.'s Ex. 11, at 28; Def.'s Ex. 12, at 29.) The 2008 Agreement provides yearly rates and hourly rates.[2] (Def.'s Ex. 18, at 36, 41–43.) Plaintiffs "receive consistent bi-weekly checks that equal 2,080 times the hourly rate stated in the Union Contract." (Pls.' Mem. of Law in Supp. of Pls.' Mot. for Summ. J. ["Pls.' S.J. Mem."] 8.)

The Article governing overtime in the Agreements reads: "Whenever any employee entitled to overtime pay works in excess of his regularly assigned workweek or work schedule, he shall be paid for such overtime at a rate of time and one-half for such overtime, in addition to any other benefit to which he may be entitled."[3] (Def.'s Ex. 11, at 21; Def.'s Ex. 12, at 23; Def.'s Ex. 18, at 28.) For court appearances, "Union members will be compensated at the rate of time and one-half for time spent in court appearances related to his Fire Department duties when employee is off duty." (Def.'s Ex. 11, at 22; Def.'s Ex. 12, at 24; Def.'s Ex. 18, at 30.) To deter-

mine the overtime rate, the City divides a firefighter's annual salary by 2,080 and multiplies the result by 1.5. (Repp Dep. 28:11–18, Jan. 28, 2008.)

When a firefighter works beyond his regularly scheduled hours due to an emergency, he is paid time-and-one-half for all "overtime" hours worked. (Repp Dep. 27:13–21.) However, firefighters are not always paid overtime for each hour worked; when a firefighter is called in to work due to understaffing, she is paid overtime for only eight hours of a twelve hour shift and sixteen hours of a twenty-four hour shift. (Repp Dep. 27:4–12; 28:1–5; Howser Dep. 21:7–22:7.)

The Agreements provide a binding "Grievances and Arbitration Procedure." (Def.'s Ex. 11, at 4; Def.'s Ex. 12, at 4; Def.'s Ex. 18, at 10.) This procedure is the exclusive remedy for the resolution of disputes over a breach, misinterpretation, or improper application of the Agreement. (*Id.*) Plaintiffs have not filed a grievance or sought arbitration.

## II.

Plaintiffs move to amend their complaint to add an additional count against defen-

---

**2.** The parties contest whether the firefighters are hourly or salaried employees. The collective bargaining agreement does not directly address this, but it is clear the firefighters are salaried employees. The letters of hire and promotion describe plaintiffs' compensation as either a "salary ... annually" or a "salary ... bi-weekly." (Def.'s Ex. 15.) The City administrators agree that the firefighters are salaried. (Davis Aff. ¶ 12; Howser Dep. 26:18–22, Jan. 28, 2008.) Most importantly, the evidence is clear that the firefighters receive a set base pay *regardless of the number of hours they are scheduled to work or in fact work*, up to forty-eight hours per week. *Cf.* 29 C.F.R. § 541.602 (salary basis test for determining whether a person is employed in exempt executive, administrative, or managerial capacities). Plaintiffs themselves state that "the bi-weekly *salary* of Plaintiffs is clearly

intended to compensate them for an average of 96 hours not including an appropriate deduction for leave." (Pls.' S.J. Reply 8 (emphasis added).)

**3.** As discussed in Part III, this contractual overtime pay is distinct from statutory overtime pay, which is due *only* for work above the maximum hours defined in the FLSA. *See, e.g., O'Brien v. Agawam*, 350 F.3d 279, 289 (1st Cir.2003) ("That the parties have by contract designated certain compensation for labor under the [FLSA] threshold 'overtime' does not affect the characterization of those payments under the FLSA."). The Agreement, which makes no mention of the FLSA, is more generous in its provision of overtime compensation than the FLSA requires.

dant. This motion is granted in part and denied in part.

■ While the "general rule is that leave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given," *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 390 (4th Cir.2008), a "district court may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir.2006) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

■ The Fourth Circuit has held that "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir.2008). On December 11, 2007, I entered a scheduling order setting a deadline of January 25, 2008, for joinder of additional parties and amendment of the pleadings. Plaintiffs filed their motion for leave to amend long past that deadline. Accordingly, in order to justify their proposed amendment, plaintiffs must show "good cause." *Id.*

■ Plaintiffs' new claim alleging noncompliance with the minimum wage provisions of the FLSA seems to be inextricably interrelated to plaintiffs' other claims for allegedly unpaid regular and overtime wages. Accordingly, plaintiffs' motion to amend is granted as to the minimum wage claim.[4]

■ However, plaintiffs' new claim for sleep and meal time wages is factually distinct from plaintiffs' other claims, and sleep and meal time wages "were not involved in the case during the discovery and were not the subject of ... discovery." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 940 (4th Cir.1995). Plaintiffs have not shown "good cause" for amending their claim well after the deadline set by this court for amending pleadings. Accordingly, plaintiffs' motion for leave to amend their complaint to add this claim is denied.

### III.

A motion for summary judgment will be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The substantive law of the cause of action determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When cross-motions for summary judgment are submitted to a district court, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the

---

4. Even though I am theoretically allowing the minimum wage claim, I note that no violation of Section 206(a) occurs "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir.1960). The record reflects that there is no minimum wage violation as to Plaintiffs Koelker and Grogg. (*See* Cumberland's Response to Pls.' Mot. for Summ. J. and Cross–Mot. for Summ. J. [Def.'s S.J. Response"] 40–42.)

non-movant." *Mellen v. Bunting,* 327 F.3d 355, 363 (4th Cir.2003).

" 'The two central themes of the FLSA are its minimum wage and overtime requirements,' " and the FLSA is "clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." *Monahan v. County of Chesterfield, Va.,* 95 F.3d 1263, 1266–67 (4th Cir.1996) (*quoting Arnold v. Arkansas,* 910 F.Supp. 1385, 1392 (E.D.Ark.1995)). Section 206 of the FLSA establishes the minimum wage requirements, and Section 207 governs maximum work hour limitations and overtime. *See* 29 U.S.C. §§ 206–207.

The FLSA generally requires employers to pay one and one-half times the employee's regular rate for each hour worked beyond forty hours in a workweek. 29 U.S.C. § 207(a)(1). Congress created a partial exemption for individuals employed by a "public agency engaged in fire protection or law enforcement activities." 29 U.S.C. § 207(k). This partial exemption

> raises the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement, and it accommodates the inherently unpredictable nature of firefighting and police work by permitting public employers to adopt work periods longer than one week.

*O'Brien,* 350 F.3d at 290. The 207(k) exemption provides:

> No public agency shall be deemed to have violated subsection (a) of this sec-

tion with respect to the employment of any employee in fire protection activities . . . if—

> . . . (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed·a number of hours which bears the same ratio to the number of consecutive days in his work period as 216[5] hours . . .

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). In other words, as stated in the regulation promulgated by the Department of Labor, "overtime compensation is required when the ratio of the number of hours worked to the number of days in the work period exceeds the ratio of 212 . . . hours to 28 days." 29 C.F.R. § 553.201. When employers choose a work period of less than twenty-eight days, the maximum number of hours is reduced proportionately. Plaintiffs do not dispute that defendant enacted a twenty-seven day work period, for which the FLSA compels overtime pay for work in excess of 204 hours.[6] (Pls.' S.J. Mem. 12.) Therefore, the 204–hour overtime threshold applies.

It is undisputed that when firefighters work an unscheduled shift due to understaffing, the City only pays "overtime" for the first eight hours worked on a twelve-hour overtime shift and the first sixteen hours of a twenty-four hour shift. (Cum-

---

**5.** "This section of the Act formerly permitted public agencies to pay overtime compensation to such employees in work periods of 28 consecutive days only after 216 hours of work.... [T]he 216–hour standard has been replaced, pursuant to the study mandated by the statute, by 212 hours for fire protection employees and 171 hours for law enforcement employees." 29 C.F.R. § 553.201(a).

**6.** This figure is derived from the ratio created by the FLSA. The Department of Labor promulgated a chart clarifying the number of hours that firefighters can work under the 207(k) exception without receiving overtime in work periods of different lengths. *See* 29 C.F.R. § 553.230.

berland's Reply to Firefighters' Response to Cumberland's Cross–Mot. for Summ. J. ["Def.'s S.J. Reply"] 1–2.) The City does not pay the firefighters either a straight hourly rate or an "overtime" rate for the remaining hours.

I have concluded that in theory plaintiffs have only three potentially viable claims under the FLSA: (1) compensation under the minimum wage requirements; (2) overtime claims to the extent they worked more than 204 hours in any twenty-seven day period; and (3) for any twenty-seven day period in which they have an overtime claim, a claim for "straight time" for any hours they worked and were not compensated for up to 204 hours. As indicated in Part II, although I am allowing plaintiffs to amend their complaint to assert a minimum wage claim, no 206(a) violation exists as to Plaintiffs Koelker and Grogg, and I doubt there is any minimum wage claim as to the other plaintiffs. I will now discuss the second and third potential claims.

## A.

■■ The collective bargaining agreements state that "[w]henever any employee entitled to overtime pay works in excess of *his regularly assigned workweek or work schedule,* he shall be paid for such overtime work at a rate of time and one-half for such overtime...." (Def.'s Ex. 11, at 21; Def.'s Ex. 12, at 23; Def.'s Ex. 18, at 28 (emphasis added).) I reject any argument made by plaintiffs that this language in the collective bargaining agreements can be used as a basis for asserting an overtime claim under the FLSA. Plain-

tiffs conflate contractual overtime, which is defined in the collective bargaining agreements, and statutory overtime, which is set by the FLSA. As the First Circuit noted, "[f]or purposes of the FLSA, all hours worked under the statutory maximum are non-overtime labor," even if the "CBAs [collective bargaining agreements] label such extra pay 'overtime.'" *O'Brien,* 350 F.3d at 289. Hours worked beyond the regularly assigned workweek are not considered "overtime" within the meaning of the FLSA unless they *also* exceed the FLSA threshold. *See Monahan,* 95 F.3d at 1276.

■ Moreover, "there is no cause of action under the FLSA for pure gap time when there is no evidence of a minimum wage or maximum hour violation by the employer." *Id.* at 1280; *see also id.* ("Logically, in pay periods without overtime, there can be no violation of section 207 which regulates overtime payment."). Defendant's failure to pay overtime for hours worked beyond plaintiffs' regularly scheduled workweek violates only the Agreements, not the FLSA. The Agreements require that contractual disputes be brought pursuant to a grievance and arbitration procedure.[7] Therefore, any claims for overtime violations in weeks where the employee works fewer hours than the FLSA statutory maximum must be brought in accordance with these procedures. I grant summary judgment for defendant on claims for compensation during work periods in which no FLSA overtime was worked.

---

7. Article III of the collective bargaining agreements provides: "The grievance and arbitration procedure contained in this Agreement shall be the exclusive remedy for resolution of disputes defined as grievances herein." (Def.'s Ex. 11, at 4–6; Def.'s Ex. 12, at 4–6; Def.'s Ex. 18, at 10–12.) The term grievance is defined as "an allegation that there has

been a breach, misinterpretation, or improper application of this agreement." (*Id.*) The grievance and arbitration provision in the Agreement does not affect plaintiffs' right to pursue claims under the FLSA in federal court. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 745, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

### B.

■ A different situation exists where a firefighter works more than 204 hours during a twenty-seven day work period. The Fourth Circuit has found that when an employee works statutory overtime in a work period, an employer must do two things in order to comply with the FLSA: compensate the employee "at a rate of at least time and a half for all hours worked in excess of the maximum allowed," and pay "all straight time compensation due to the employee for nonovertime hours under the express or implied employment agreement or applicable statute." *Monahan*, 95 F.3d at 1273.

### (1)

■ The FLSA is clearly violated when the City fails to pay at least one and one-half times the regular rate for each hour worked above 204 in a twenty-seven day work period. 29 U.S.C. § 207. Therefore, summary judgment is granted for plaintiff on the issue of liability as to defendant's failure to pay overtime for each hour above 204 worked. As indicated above, the record reflects the hours worked as to only two plaintiffs. In the two years preceding this suit,[8] Plaintiff Koelker worked more than 204 hours in two work periods: from January 28, 2007 through February 23, 2007, he worked 231 hours, and from January 14, 2008 through February 9, 2008, he worked 217 hours. (Def.'s S.J. Response 12.) Plaintiff Grogg worked more than 204 hours in three work periods: from February 11, 2006 through March 9, 2006, he worked 211.5 hours; from July 23, 2006 through August 18, 2006, 264 hours; and from February 24, 2007 through March 22, 2007, 244 hours. (*Id.*) These are the only work periods where recovery is available under the FLSA.

### (2)

■ Plaintiffs also claim they are entitled to recover for hours worked above their regularly scheduled workweek but below the FLSA overtime threshold, because their salary does not compensate them for those hours.[9] As mentioned in Part III.A., *Monahan* held that there is no remedy under the FLSA for straight time compensation ("gap time") in work periods where no FLSA overtime is worked. The reason for this holding was that "[f]or there to be an overtime gap time cause of action under the FLSA, a violation of section 206 or 207 of the Act must first exist." *Monahan*, 95 F.3d at 1284. However, *Monahan* separately analyzed straight time compensation claims for work periods

---

8. The statute of limitations in this case is two years. If an employer willfully violates the overtime pay provisions, the statute of limitations is extended from two years to three years. 29 U.S.C. § 255(a). The standard of willfulness in this context is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Plaintiffs bear the burden of proof. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir.1999). Given the difficulty of the issues presented in this case and the lack of evidence of recklessness by the City, I find that the City's conduct was not willful.

9. Defendant claims that plaintiffs have not pled a cause of action for straight time pay for hours worked between regularly scheduled hours and the FLSA threshold. (Def.'s S.J. Response 43.) However, the Complaint asserts that "Plaintiffs also bring claims … to recover overtime compensation, *straight time compensation*, interest, attorneys' fees and costs, and treble damages under the Maryland wage and hour laws…." (Compl. ¶ 9.) The Complaint requests not only "unpaid overtime wages" but also "unpaid wages." (Compl. Prayer for Relief ¶ d.) This claim was made explicitly in plaintiffs' summary judgment motion. (*See* Pls.' S.J. Mem. 25.)

in which an employee *also* works FLSA overtime. As one court noted,

> The [Monahan] court did not rule, as it did with the plaintiffs' pure gap time claims, that the FLSA is not the proper vehicle to pursue straight time compensation. Rather, because the court went through the exercise of examining whether all straight time hours were paid during overtime weeks, that a plaintiff can recover owed straight time compensation under the FLSA for weeks in which she works overtime is implicit.

*Barvinchak v. Ind. Reg'l Med. Ctr.*, No. 3:2006–69, 2007 WL 2903911, at *6 (W.D.Pa. Sept. 28, 2007) (mem.). Here, a Section 207 violation exists in work periods where a firefighter works over 204 hours yet is not paid overtime for each hour above 204; as a result, there is "an overtime gap time cause of action" under the FLSA. *Monahan*, 95 F.3d at 1284.

In finding that the FLSA provides a remedy for gap time compensation in work periods where the FLSA overtime provision is violated, *Monahan* looked to Department of Labor interpretations.[10] The interpretations provide, under the heading "Payment for all hours worked in overtime workweek is required," that "extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid." 29 C.F.R. § 778.315. The *Monahan* court found that "[t]his interpretation expressly requires that in order to determine overtime compensation, one must first look to the employment agreement to determine whether the employer has first paid all straight time due under the agreement." *Monahan*, 95 F.3d at 1273; *see also Barvinchak*, 2007 WL 2903911, at *4 ("The language of § 778.315, that overtime pay has not been paid unless 'all the straight time compensation due' ... 'for the non-overtime hours' ... 'has been paid,' clearly provides that an employer must pay all owed straight time compensation in order to comply with the FLSA's overtime requirement and this Court accords this interpretation by the Department of Labor some deference.").

Other Department of Labor interpretations support this conclusion. Section 778.322, discussing an employee whose workweek is reduced while his salary remains the same, provides:

> If an employee whose maximum hours standard is 40 hours was hired at a salary of $200 for a fixed workweek of 40 hours, his regular rate at the time of hiring was $5 per hour. If his workweek is later reduced to a fixed workweek of 35 hours while his salary remains the same, it is the fact that it now takes him only 35 hours to earn $200, so that he earns his salary at the average rate of $5.71 per hour. His regular rate thus becomes $ 5.71 per hour; it is no longer $5 an hour. Overtime pay is due under the Act only for hours worked in excess of 40, not 35, but if the understanding of the parties is that the salary of $200 now covers 35 hours of work and no more, the employee would be owed $5.71 per hour under his employment

---

10. " '[T]he rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' " *Monahan*, 95 F.3d at 1273 n. 10 (*quoting Watkins v. Cantrell*, 736 F.2d 933, 943 (4th Cir.1984)). The interpretations "ordinarily command[ ] considerable deference." *Id.* (*quoting Watkins*, 736 F.2d at 943).

contract for each hour worked between 35 and 40. He would be owed not less than one and one-half times $5.71 ($8.57) per hour, under the statute, for each hour worked in excess of 40 in the workweek. In weeks in which no overtime is worked only the provisions of section 6 of the Act, requiring the payment of not less than the applicable minimum wage for each hour worked, apply so that the employee's right to receive $5.71 per hour is enforceable only under his contract. However, in overtime weeks the Administrator has the duty to insure the payment of at least one and one-half times the employee's regular rate of pay for hours worked in excess of 40 and this overtime compensation cannot be said to have been paid until all straight time compensation due the employee under the statute or his employment contract has been paid. Thus if the employee works 41 hours in a particular week, he is owed his salary for 35 hours—$200, 5 hours' pay at $5.71 per hour for the 5 hours between 35 and 40—$28.55, and 1 hour's pay at $8.57 for the 1 hour in excess of 40—$8.57, or a total of $237.12 for the week.

Similarly, Section 778.317 states:

An agreement not to compensate employees for certain nonovertime hours stands on no better footing since it would have the same effect of diminishing the employee's total overtime compensation. An agreement, for example, to pay an employee whose maximum hours standard for the particular workweek is 40 hours, $5 an hour for the first 35 hours, nothing for the hours between 35 and 40 and $7.50 an hour for the hours in excess of 40 would not meet the overtime requirements of the Act. Under the principles set forth in § 778.315, the employee would have to be paid $25 for the 5 hours worked between 35 and 40 before any sums ostensibly paid for overtime could be credited toward overtime compensation due under the Act. Unless the employee is first paid $5 for each nonovertime hour worked, the $7.50 per hour payment purportedly for overtime hours is not in fact an overtime payment.

29 C.F.R. § 778.317.

The *Monahan* court found that Section 778.317 did not apply in the case before it because under the *Monahan* plaintiffs' employment contract, "the salary compensated the officers for all hours worked up to the [FLSA] threshold." *Monahan*, 95 F.3d at 1278; *see also Braddock v. Madison County*, 34 F.Supp.2d 1098, 1110 (S.D.Ind.1998) ("The Fourth Circuit found that the regulation [§ 778.317] did not apply because it construed the parties' contract not as an agreement not to pay for certain hours, but as an agreement to pay a fixed salary for any and all hours up to the overtime threshold.").

■ Other courts have reached a similar conclusion. *See Carter v. City of Charleston*, 995 F.Supp. 620, 621 (D.S.C. 1997) (while gap time claims in work periods without FLSA overtime are not cognizable under the FLSA, gap time claims for periods in which FLSA overtime is worked are available, and the court must determine "what hours of work Plaintiffs' regular pay compensated" to evaluate those claims); *Schmitt v. Kansas*, 864 F.Supp. 1051, 1061 (D.Kan.1994) ("Read together, §§ 778.315 and 317 establish the principle that, in order to comply with the overtime requirements of the FLSA, an employer must pay at the regular rate for all nonovertime hours worked in a period in which the employee also worked overtime."); *Reich v. Midwest Body Corp.*, 843 F.Supp. 1249, 1251–52 (N.D.Ill.1994) ("Overtime pay, as required by the FLSA, has not been paid unless both straight

time pay and overtime pay have been fully paid and have been paid based on an employee's regular pay."). Therefore, I find that *Monahan* requires me to allow a straight time compensation claim "for gap hours when overtime hours [are] worked during a pay cycle." *Monahan*, 95 F.3d at 1273.[11]

*(3)*

*a.*

■■ I must first determine whether the firefighters' salary is intended to compensate them for all hours worked up to the FLSA overtime threshold, or for a lesser number of hours such that "gap time" exists for which straight time compensation is due. As did the court in *Monahan*, I "consider[ ] the evidence in the record concerning the terms of the employment agreement." *Monahan*, 95 F.3d at 1273. "Th[e] agreement can be determined by a written contract as well as by the everyday employment practices of the parties." *Id.* at 1284.

Under the Agreements, "[w]henever any employee entitled to overtime pay works in excess of his regularly assigned workweek or work schedule, he shall be paid for such overtime work at a rate of time and one-half for such overtime, in addition to any other benefit to which he may be entitled." (Def.'s Ex. 11, at 21; Def.'s Ex. 12, at 23; Def.'s Ex. 18, at 28.) The 2003 Agreement stated that the "term 'Kelly Days' shall denote days used as days off to reduce the total work hours to forty-eight (48) hours per week." (Def.'s Ex. 11, at 21.) The 2006 and 2008 Agreements provide that firefighters will work twenty-four hours "on" and forty-eight hours "off"; after six shifts, employees are off every seventh shift. (Def.'s Ex. 12, at 22; Def.'s Ex. 18, at 28.) This averages to forty-eight hours a week. For other members of the Department, such as training officers and dispatchers, the workweek is established by the Chief but under the Agreements "shall not exceed an average of 48 hours per week." (Def.'s Ex. 11, at 21; Def.'s Ex. 12, at 23; Def.'s Ex. 18, at 28.) I find it unambiguous that the term "regularly assigned workweek" means forty-eight hours.[12] Given that overtime "shall be

11. As the Supreme Court has stated, "[t]he principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours." *Barrentine*, 450 U.S. at 739, 101 S.Ct. 1437. While I follow the direction of *Monahan* and the Department of Labor regulations in this opinion, I note that one could, in the alternative, take the approach that compensation for FLSA overtime hours is the *sole* recovery available under the FLSA maximum hour provision. This approach would leave the contractual interpretation and determination of straight time compensation to state courts, which are better positioned to address these issues. *Cf. Monahan*, 95 F.3d at 1267 ("Even in light of the broad interpretation given to the FLSA's remedial provisions and the narrowness of its exceptions, we believe the statute's use in this case to be far beyond that intended by its original congressional drafters and many of today's applicable Department of Labor regulations and interpretations. Additionally, its attempted use in this case represents a major expansion of federal jurisdiction in an area that is more appropriate for state court adjudication under state employment and contract law."). This approach would also be consistent with *Monahan*'s finding that "[a]ny dispute … about the number of hours for which the employees' salary was intended to compensate them is not cognizable under the FLSA, but instead should be pursued under state contract law." *Id.* at 1279–80.

12. Extrinsic evidence presented by the City and its employees on the number of hours the salary is intended to compensate is conflicting. However, "[w]here the language of a contract is not ambiguous, a court generally will not look to parol or extrinsic evidence to vary its meaning." *Floyd v. Mayor and City Council of Baltimore*, 179 Md.App. 394, 946 A.2d 15, 40 (Md.Ct.Spec.App.2008) (*citing*

paid" under the Agreements for hours worked beyond the regularly assigned workweek, which is forty-eight hours, I find that the firefighters' salary is only intended to compensate the firefighters for forty-eight hours per week. Hours worked above forty-eight in a week but below the FLSA overtime threshold constitute "gap time" compensable by straight time compensation.

### b.

■ Because plaintiffs are entitled to recover for gap hours worked in work periods where the FLSA overtime threshold is exceeded, I must determine whether the FLSA requires that the overtime rate (as required by the Agreements) or a straight time rate be paid for the gap time. I find that under the FLSA, plaintiffs may recover only straight time compensation for gap time hours; any right to the premium portion required by the Agreements is a contractual claim that must be pursued in accordance with the Agreements' grievance provisions. Moreover, the premium portions of payments made to plaintiffs for non-FLSA overtime may be credited towards what is owed for FLSA overtime compensation.

I derive this conclusion from the statute and Department of Labor interpretations. In determining the "regular rate" at which an employee is employed, the following compensation is *not* included:

> extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular ... workweek (not exceeding the maximum workweek applicable to such em-

ployee under subsection (a) of this section,[) ] where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek....

29 U.S.C. § 207(e)(7). Extra compensation paid pursuant to Section 207(e)(7) "shall be creditable toward overtime compensation payable pursuant to this section." *Id.* § 207(h)(2).

The extra compensation provided pursuant to the Agreements for hours worked above forty-eight per week fits the definition of Section 207(e)(7), and can therefore be credited towards any overtime due under the FLSA. The Department of Labor interpretations provide the following example:

> [I]f an employee is paid $5 an hour under such an agreement for handling general cargo during the basic, normal, or regular workday and $7.50 per hour for like work outside of such workday, the extra $2.50 will be excluded from the regular rate and may be credited to overtime pay due under the Act."

29 C.F.R. § 778.206. Here, the employee is paid a salary covering up to forty-eight hours weekly, and time-and-one-half based on his salary divided by 2,080 for hours above the forty-eight hour weekly threshold. The one-half premium is equivalent to the "extra $2.50" in the example. Given that this premium portion is to be used to offset the pay due under the FLSA, it cannot be that, at the same time, the premium portion is *due under the FLSA* for gap hours. Such a result would plainly contradict the offset provision in Section 207(h)(2).

*Higgins v. Barnes,* 310 Md. 532, 530 A.2d 724 (1987); *Maslow v. Vanguri,* 168 Md.App. 298,

896 A.2d 408 (2006)). Therefore, I do not consider this parol evidence.

*c.*

█ A question remains regarding the proper way to calculate the amounts due for straight time and FLSA overtime wages. Given the City's consistent prior practice, it is clear that straight time compensation for hours worked in the "gap" between forty-eight hours per week and 204 hours in a work period should be calculated in accordance with the rate paid by the City for "gap" hours it does compensate (i.e., the first eight of twelve hours worked beyond forty-eight in a week). The City derives this rate by dividing a firefighter's salary by 2,080.[13] Because the contract as interpreted by the course of conduct of the parties uses the 2,080 denominator in determining the rate for

contractual overtime, the city is estopped from asserting that a 2,496 figure[14] should be used to calculate contractual overtime/gap hours. As I have previously indicated, any premium portions of payments made for contractual overtime may be credited towards the FLSA overtime due in that work period.[15] 29 U.S.C. § 207(h)(2).[16]

For ease, I find that also using this same rate to determine the FLSA overtime rate—the rate derived from the 2,080 denominator—is most appropriate. This method provides a fair approximation of the result intended by the contract and the parties without adding an unnecessary level of complexity.[17]

13. Plaintiffs "receive consistent bi-weekly checks that equal 2,080 times the hourly rate stated in the Union Contract." (Pls.' S.J. Mem. 8.) To determine the overtime rate, the City divides a firefighter's annual salary by 2,080 and multiplies the result by 1.5. (Def.'s S.J. Reply 2; Repp Dep. 28:11–18.) This 2,080 figure is based on a forty-hour work-week.

14. The 2,496 figure is obtained by multiplying forty-eight, the number of hours per week the salary is intended to compensate, by fifty-two, the number of weeks in a year.

15. For example, if a firefighter's hourly rate was $10, and the firefighter received $15 per hour for hours worked below 204 in a twenty-seven day period, the $5 premium received for those hours is credited towards the FLSA overtime due for that twenty-seven day period for hours worked above 204.

16. The City argues that the amount of FLSA overtime compensation due to an employee may be offset by totaling all overtime payments, including contractual overtime payments, made in a fiscal year. (Def.'s S.J. Response 26–27.) However, each twenty-seven day work period stands alone, and the amount of FLSA overtime due in a work period is unaffected by any payments made in other work periods.

17. In addition to using the 2,080 denominator to determine the FLSA overtime rate, there

are two other possible ways to calculate the FLSA overtime compensation due in this case. An argument could be made for use of the 2,496 figure as the denominator for calculation of FLSA overtime hours; indeed, plaintiffs contend that should be the case. (See Pls.' S.J. Mem. 16); cf. 29 C.F.R. § 778.113 ("If the employee is employed solely on a weekly salary basis, his regularly hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."). However, in work periods where firefighters work above forty-eight hours in a week, their compensation is *not* based solely on their salary; they also receive "contractual overtime," which is calculated at a higher rate, a rate based on the 2,080 denominator. Therefore, using the 2,496 denominator to calculate overtime would fail to take into account the higher rate paid for contractual overtime hours. Still another way, calculating the actual hourly rate for each time period and multiplying it by 1.5 to determine the FLSA overtime rate, would be most accurate. See 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). Under this theoretically purer calculation, the City would calculate the portion of the salary intended to compen-

## C.

■ Under the FLSA, an employer who violates its terms is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Fourth Circuit has found that the "FLSA plainly envisions that liquidated damages in an amount equal to the unpaid overtime compensation are the norm" for violations of the maximum hour provision of the FLSA. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir.1997). A "good faith" exception is available: "[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act," a court may decide not to award liquidated damages, or may award liquidated damages in an amount less than that of the unpaid overtime compensation. 29 U.S.C. § 260. Given the complexity of the issues, the

history of the collective bargaining agreements, and the fact that the City's compensation practice has been known to the parties for many years and the subject of bargaining, I find that the good faith exception is applicable and decline to award liquidated damages.[18]

## IV.

Plaintiffs bring two claims under Maryland state law: the Maryland Wage and Hour Law, Md.Code Ann., Lab. & Empl. §§ 3–401 *et seq.*, and the Maryland Wage Payment and Collection Act, Md.Code Ann., Lab. & Empl. §§ 3–501 *et seq.*

■ It is clear the Maryland Wage Payment and Collection Act ("MWPCA") does not apply in this case, because plaintiffs make no allegations whatsoever that they were not given the notices required under this statute.[19]

■ As to the claim under the Maryland Wage and Hour Law ("MWHL"), there is no Maryland case directly on point. However, it seems clear to me that

---

sate for a twenty-seven day period, add the payments made for contractual overtime hours (which are calculated using the 2,080 denominator), subtract the premium portion of those payments (which may be used to offset FLSA overtime compensation due), and divide the result by the number of hours actually worked during the twenty-seven day work period. The resulting amount would be multiplied by 1.5 to determine the FLSA overtime rate. While the City may choose to employ this more complex method rather than the 2,080 denominator to determine the FLSA overtime rate, it may not be worth the time and effort required to gather and analyze the necessary data, especially given that the hourly rate for each employee would need to be recalculated for each twenty-seven day period in which over 204 hours are worked.

18. Even if liquidated damages were warranted in this case, liquidated damages would apply only to the award of FLSA overtime; the straight time compensation awarded for

gap hours is not subject to liquidated damages.

19. Plaintiffs allege violations of Sections 3–502 and 3–504 of the MWPCA. Section 3–502 provides that an employer must set regular pay periods and ordinarily pay each employee at least once in every two weeks or twice in each month. *See* Md.Code Ann., Lab. & Empl. § 3–502(a). The Section also sets forth various technical requirements for payments of wages. *See id.* § 3–502(b)–(e). Section 504 requires that an employer give an employee at the time of hiring his or her rate of pay, regular paydays, and leave benefits. *See id.* § 3–504(a)(1). For each pay period, the employer must give "a statement of the gross earnings of the employee and deductions from those gross earnings." *See id.* § 3–504(a)(2). The Section also requires that the employer provide notice of changes in paydays or wages at least one pay period in advance. *See id.* § 3–504(a)(3).

defendant is correct in contending that because "employer" under Md.Code Ann., Lab. & Empl. § 3–401 is defined as a "person," which is in turn defined in Section 1–101(d) to exclude governmental units, the City is not subject to the MWHL. Defendant's argument is supported by other provisions within Title III of the Labor and Employment Article in which the General Assembly expressly provides that "employer" includes, in addition to persons, municipal or local governments. *See* Md.Code Ann., Lab. & Empl. § 3–301(b)(1) ("Equal Pay for Equal Work" Act) (" 'Employer' means: (i) a person engaged in a business, industry, profession, trade, or other enterprise in the State; (ii) the State and its units; (iii) a county and its units; and (iv) a municipal government in the State."); *id.* § 3–702(a) ("In this section, 'employer' means: (1) a person engaged in a business, industry, profession, trade, or other enterprise in the State; (2) the State; (3) a county; and (4) a municipal corporation in the State."); *id.* § 3–801(a)(2) (" 'Employer' includes: (i) a unit of State or local government that employs individuals who are not subject to the provisions of Title 9, Subtitle 5 of the State Personnel and Pensions Article; and (ii) a person who acts directly or indirectly in the interest of another employer with an employee."). Therefore, because the City is not an employer under the MWHL, summary judgment is granted for defendant on the state law claims.[20]

For the foregoing reasons, I grant in part and deny in part plaintiffs' motion for leave to amend their complaint. I grant in part and deny in part plaintiffs' motion for summary judgment and defendant's motion for summary judgment. A separate order to that effect is being entered herewith.

## ORDER

For the reasons stated in the accompanying opinion, it is, this 24th day of February 2009

### ORDERED

1. Plaintiff's motion for leave to amend the complaint is granted in part and denied in part;

2. Plaintiff's motion for summary judgment is granted in part and denied in part; and

3. Defendant's motion for summary judgment is granted in part and denied in part.

---

20. In any event, assuming that the MWHL applies to local governments, the recovery to plaintiffs under the Act would likely be no different than recovery under the FLSA. "There is no provision in the Wage and Hour Law for enhanced damages; the only recovery allowed, aside from costs and reasonable counsel fees, is the difference between the wage due and the wage paid." *Friolo v. Frankel,* 373 Md. 501, 819 A.2d 354, 361–62 (2003).