12-1453-cv
Lundy v. Catholic Health System of Long Island Inc.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: October 25, 2012     Decided: March 1, 2013)

Docket No. 12-1453

- - - - - - - - - - - - - - - - - - - - -x

DENNIS LUNDY, on behalf of themselves and all other employees similarly situated, PATRICIA WOLMAN, KELLY IWASIUK,

Plaintiffs-Appellants,

DAISY RICKS, on behalf of herself and all other employees similarly situated,

Plaintiff,

- v.-

CATHOLIC HEALTH SYSTEM OF LONG ISLAND INCORPORATED, DBA Catholic Health Services of Long Island, GOOD SAMARITAN HOSPITAL MEDICAL CENTER, MERCY MEDICAL CENTER, NEW ISLAND HOSPITAL, AKA St. Joseph Hospital, ST. CATHERINE OF SIENA MEDICAL CENTER, ST. CHARLES HOSPITAL AND REHABILITATION CENTER, ST. FRANCIS HOSPITAL, Roslyn, New York, OUR LADY OF CONSOLATION GERIATRIC CARE CENTER, NURSING SISTERS HOME CARE, DBA Catholic Care Home, JAMES HARDEN,

Defendants-Appellees,

LONG ISLAND HEALTH NETWORK, INCORPORATED, BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER INCORPORATED, AKA Brookhaven Memorial Hospital Medical Center, JOHN T. MATHER MEMORIAL HOSPITAL OF PORT JEFFERSON, NEW YORK, INCORPORATED, AKA John T. Mather Memorial Hospital, SOUTH NASSAU COMMUNITIES HOSPITAL, WINTHROP-UNIVERSITY HOSPITAL, TERRY HARGADON, BRIAN CURRIE, KATHLEEN MASIULIS,

Defendants.

- - - - - - - - - - - - - - - - - - - - -x

Before: JACOBS, <u>Chief Judge</u>, WALKER, <u>Circuit Judge</u>, and O'CONNOR, <u>Associate Justice (retired)</u>.[*]

Plaintiffs, on behalf of a purported class of similarly situated employees, appeal from the orders of the District Court for the Eastern District of New York (Seybert, <u>J.</u>), dismissing their claims under the Fair Labor Standards Act, the Racketeer Influenced and Corrupt Organizations Act, and New York Labor Law. For the following reasons, the judgment is affirmed in part, and in part vacated and remanded.

MICHAEL J. LINGLE, Thomas & Solomon LLP, Rochester, New York (J. Nelson Thomas, Guy A. Talia, Jessica L. Witenko, <u>on the brief</u>), <u>for Appellants</u>.

JAMES E. MCGRATH, III, Putney, Twombly, Hall & Hirson LLP, New York, New York (Daniel F. Murphy, Jr., Michael T. McGrath, Randi B. Feldheim, Adriana S. Kosovych, Putney, Twombly, Hall & Hirson LLP, New York, New York, <u>on the brief</u>; Stephen J. Jones, Todd R. Shinaman, Joseph A. Carello, Nixon Peabody LLP, Rochester, New York, <u>on the brief</u>), <u>for Appellees</u>.

---

[*] The Honorable Sandra Day O'Connor, Associate Justice (retired) of the United States Supreme Court, sitting by designation.

DENNIS JACOBS, Chief Judge:

Plaintiffs, a respiratory therapist and two nurses, allege that the Catholic Health System of Long Island Inc., a collection of hospitals, healthcare providers, and related entities (collectively, "CHS"), failed to compensate them adequately for time worked during meal breaks, before and after scheduled shifts, and during required training sessions. They sued on behalf of a purported class of similarly situated employees (collectively, "the Plaintiffs") and take this appeal from orders of the United States District Court for the Eastern District of New York (Seybert, J.), dismissing the claims asserted under the Fair Labor Standards Act ("FLSA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the New York Labor Law ("NYLL").

We affirm the dismissal of the FLSA and RICO claims for failure to state a claim. We also affirm the dismissal of Plaintiffs' NYLL overtime claims, which have the same deficiencies as the FLSA overtime claims. However, because the district court did not explain why Plaintiffs' NYLL gap-time claims were dismissed with prejudice, we vacate that aspect of the judgment and remand for further consideration of the NYLL gap-time claims.

**BACKGROUND**

The original complaint, alleging violations of FLSA and RICO, was filed in March 2010 by Daisy Ricks, a healthcare employee, on behalf of similarly situated employees, against the Long Island Health Network, Inc., Catholic Health Services of Long Island, and various related entities.[1] The First Amended Complaint, filed in June 2010, substituted Dennis Lundy, Patricia Wolman, and Kelly Iwasiuk as lead plaintiffs, dropped some defendants, and added claims under NYLL and state common law. The twelve causes of action pleaded were FLSA, RICO, NYLL, implied contract, express contract, implied covenants, quantum meruit, unjust enrichment, fraud, negligent misrepresentation, conversion, and estoppel. This case is one of many similar class

---

[1] The complicated facts and procedural history of this case are recounted in detail in five orders issued by the district court. See Mem. & Order, Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326 (E.D.N.Y. Dec. 30, 2010) (Special App. 1-19); Mem. & Order, Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326 (E.D.N.Y. May 5, 2011) (Special App. 20-32); Mem. & Order, Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326 (E.D.N.Y. May 24, 2011) (Special App. 33-37); Mem. & Order, Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326 (E.D.N.Y. Feb. 16, 2012) (Special App. 38-74); Mem. & Order, Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326 (E.D.N.Y. Mar. 12, 2012) (Special App. 75-77). We recount only those that bear on the resolution of this appeal.

4

actions brought by the same law firm, Thomas & Solomon LLP, against numerous healthcare entities in the region. A dozen of them are currently on appeal before this Court.[2]

The FLSA claims focused on alleged unpaid overtime. In relevant part, FLSA's overtime provision states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).[3]

It is alleged that CHS used an automatic timekeeping system that deducted time from paychecks for meals and other breaks even though employees frequently were required to

---

[2] See Yarus v. N.Y.C. Health & Hosps. Corp., No. 11-710; Megginson v. Westchester Cnty. Health Care Corp., No. 11-713; Megginson v. Westchester Med. Ctr., No. 12-4084; Alamu v. Bronx-Lebanon Hosp. Ctr., No. 11-728; Alamu v. Bronx-Lebanon Hosp. Ctr., No. 12-4085; Nakahata v. N.Y.-Presbyterian HealthCare Sys., No. 11-734; Nakahata v. N.Y. Presbyterian HealthCare Sys., No. 12-4128; Hinterberger v. Catholic Health Sys., No. 12-630; Hinterberger v. Catholic Health Sys., No. 12-918; Gordon v. Kaleida Health, No. 12-654; Gordon v. Kaleida Health, No. 12-670; Lundy v. Catholic Health Sys. of Long Island Inc., No. 12-1453.

[3] In addition to FLSA's overtime provisions, Section 206 of FLSA requires that employers pay a minimum wage. Plaintiffs have not brought minimum wage claims in this case.

5

work through their breaks, and that CHS failed to pay for time spent working before and after scheduled shifts, and for time spent attending training programs.[4]

The procedural history of this case was prolonged by four attempts to amend the complaint, and various orders dismissing the claims, as recounted below.

A Second Amended Complaint, filed in August 2010, replaced some of the defendants that had been sued in error. On motion, the district court dismissed most of the claims, without prejudice. The FLSA overtime claims were dismissed for failure to approximate the number of uncompensated overtime hours. The FLSA claim for "gap-time" pay (i.e., for unpaid hours below the 40-hour overtime threshold) was dismissed--with prejudice--on the ground that FLSA does not permit gap-time claims when the employment contract explicitly provides compensation for gap time worked. The RICO claims were dismissed--with prejudice--for insufficient allegations of any pattern of racketeering activity. Once the federal claims were dismissed, the state law claims were dismissed without prejudice.

---

[4] Since Plaintiffs were not subject to a collective bargaining agreement while they were employed by CHS, the Labor Management Relations Act is not at issue in this case.

6

The district court granted leave to replead the FLSA overtime claims that were dismissed without prejudice, but cautioned that any future complaint "should contain significantly more factual detail concerning who the named Plaintiffs are, where they worked, in what capacity they worked, the types of schedules they typically or periodically worked, and any collective bargaining agreements they may have been subject to."  Special App. 18. The district court said that it would "not be impressed if the Third Amended Complaint prattle[d] on for another 217 paragraphs, solely for the sake of repeating various conclusory allegations many times over."  Id. at 19.

The Third Amended Complaint, filed in January 2011, was largely identical to the Second (with the addition of approximately ten paragraphs).  When CHS moved to dismiss, the court issued an order sua sponte urging supplemental briefing and a more definite statement.  Observing that Plaintiffs had again failed to achieve sufficient specificity, the court added:

> [T]he Court does not believe that it would serve
> anyone's interest to enter another dismissal without
> prejudice, which would be followed almost assuredly by
> another amended complaint and then a full round of Rule
> 12(b)(6) briefing.  Instead, the Court considers it
> more appropriate to sua sponte direct Plaintiffs to

7

file a more definite statement, which it will then use to judge the sufficiency of the [Third Amended Complaint].

Special App. 26. The court expressed concern with the vagueness of the pleading, directed Plaintiffs to stop "hiding the ball," id. at 27, and listed specific information needed for a more definite statement.

Plaintiffs failed to issue a more definite statement and instead filed a Fourth Amended Complaint (hereinafter, "the Complaint") in May 2011. The RICO and estoppel claims were dropped, and the remaining causes of action were pleaded as before, supplemented with some more facts.

CHS's renewed motion to dismiss was largely granted in February 2012, on the following grounds:

1. Plaintiffs insufficiently pled the requisite employer-employee relationship as to each named defendant, because Lundy, Wolman, and Iwasiuk worked only at Good Samaritan Hospital, and because the "economic realities" of the relationships among defendants did not constitute a single employment organization. The FLSA claims against all defendants other than Good Samaritan were dismissed with

8

prejudice.[5]

2. The FLSA claims against Defendant James Harden (the CEO, President, and Director of CHS) were dismissed with prejudice because the economic reality of his relationship with Lundy, Wolman, and Iwasiuk did not amount to an employer-employee relationship.

3. As to the claim that the automatic timekeeping deductions allegedly violated FLSA as applied to Plaintiffs (even though they were not per se illegal), the Plaintiffs failed to show that they were personally denied overtime by this system.

4. As to their FLSA overtime allegations against Good Samaritan, Plaintiffs were required to plead that they worked (1) *compensable hours* (2) in excess of 40 hours per week, and (3) that CHS knew that Plaintiffs were working overtime. Only some of the categories of purportedly unpaid work--meal breaks, time before and after scheduled shifts, and training--constituted "compensable" hours.

---

[5] The court also rejected arguments that all of the named defendants operated as a single enterprise, or that they were all liable under theories of agency and alter-ego. Even though the district court dismissed the FLSA claims against CHS, we use the term "CHS" in this opinion to refer to Defendants generally.

Work during meal breaks is compensable under FLSA if "predominantly" for the employer's benefit. Special App. 62. Although Plaintiffs alleged that their meal breaks were "typically" missed or interrupted, the Complaint "is void of any facts regarding the nature and frequency of these interruptions during the relevant time period or how often meal breaks were missed altogether as opposed to just interrupted." Id. at 63. Absent such specificity, there is no claim for compensable time.

Time spent working before and after scheduled shifts is compensable if it is "integral and indispensable" to performance of the job and not de minimis. Id. at 64. Vague assertions that Wolman and Iwasiuk spent fifteen to thirty minutes before their shifts "preparing" their assignments did not state a claim for compensable time. Id. at 64-65. On the other hand, Lundy's allegation--that he had to arrive early to receive his assignment from the nurse working the prior shift and leave late to hand off assignments to the nurse taking over--could be compensable.

Time spent at training is not compensable if it is outside regular hours, if attendance is voluntary, if

10

the training is not directly related to the job, and if the employee does not perform productive work during the training.  See id. at 66.  Wolman and Lundy's allegations regarding monthly, mandatory staff meetings stated claims for compensable time.  (Iwasiuk made no allegation of uncompensated trainings.)

5.  The potentially valid allegations of compensable time nevertheless did not allege that the compensable time exceeded 40 hours, as required for a FLSA overtime claim.  Wolman and Iwasiuk's sparse allegations could not support a claim for time in excess of 40 hours.  And Plaintiffs conceded that Lundy never actually worked more than 40 hours in one week.  The FLSA claims against Good Samaritan were therefore dismissed without prejudice.

6.  Once the federal claims were dismissed, discretion was exercised against taking jurisdiction over the state law claims, thereby also dismissing them without prejudice.

Having done all this, the district court granted Plaintiffs limited leave to file a further complaint alleging only those claims that had been dismissed without prejudice, and again gave specific guidance as to the "contours" of such a complaint.  Special App. 70-72.

11

In response to Plaintiffs' inquiry, the district court issued another order a month later, clarifying the scope of the February 2012 order dismissing the Complaint. The court explained that it dismissed all claims against all defendants, except Good Samaritan, and that the FLSA and NYLL claims were dismissed with prejudice, while the remaining state law claims were not. See id. at 76.

Plaintiffs mercifully elected to forgo another amended complaint, and instead filed their Notice of Appeal on April 11, 2012, indicating their intent to appeal the district court's December 2010 Order dismissing the Second Amended Complaint, the May 2011 sua sponte Order requesting supplemental briefing, the February 2012 Order dismissing the Fourth Amended Complaint, and the March 2012 Order clarifying the scope of the dismissal.

## DISCUSSION

On appeal, Plaintiffs challenge the dismissal of [1] the overtime claims under FLSA; [2] the gap-time claims under FLSA (and NYLL); [3] the NYLL claims *with prejudice*; and [4] the RICO claims.

12

**I**

We review de novo dismissal of a complaint for failure to state a claim upon which relief can be granted, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth." Id. at 679.

**II**

As to the overtime claims under FLSA, Plaintiffs argue that they sufficiently alleged [i] compensable work that was

13

unpaid, [ii] uncompensated work in excess of 40 hours in a given week, and [iii] status as "employees" of all the Defendants. Although the district court held Plaintiffs' complaint lacking on all three grounds, we affirm on the second ground--the failure to allege uncompensated work in excess of 40 hours in a given week--because it entirely disposes of the FLSA overtime claims.

Section 207(a)(1) of FLSA requires that, "for a workweek longer than forty hours," an employee who works "in excess of" forty hours shall be compensated for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed" (i.e., time and a half). 29 U.S.C. § 207(a)(1).[6] So, to survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable

---

[6] In its entirety, Section 207(a)(1) provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Id.

14

overtime in a workweek longer than 40 hours. Under Federal Rule of Civil Procedure 8(a)(2), a "plausible" claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citation omitted)).

We have not previously considered the degree of specificity needed to state an overtime claim under FLSA. Federal courts have diverged somewhat on the question. See Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 667 (D. Md. 2011) (recognizing that "courts across the country have expressed differing views as to the level of factual detail necessary to plead a claim for overtime compensation under FLSA"). Within this Circuit, some courts have required an approximation of the total uncompensated hours worked during a given workweek in excess of 40 hours. See, e.g., Nichols v. Mahoney, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009); Zhong v. August August Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y.

15

2007).  Courts elsewhere have done without an estimate of overtime, and deemed sufficient an allegation that plaintiff worked some amount in excess of 40 hours without compensation.  See, e.g., Butler, 800 F. Supp. 2d at 668 (collecting cases).

We conclude that in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.  See 29 U.S.C. § 207(a)(1) (requiring that, "for a workweek longer than forty hours," an employee who works "in excess of" forty hours shall be compensated time and a half for the excess hours).

Determining whether a plausible claim has been pled is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[7] Iqbal, 556 U.S. at 679.  Reviewing Plaintiffs' allegations, as the district court thoroughly did, we find no plausible claim that FLSA was violated, because Plaintiffs have not alleged a single workweek in which they worked at least 40

---

[7] Under a case-specific approach, some courts may find that an approximation of overtime hours worked may help draw a plaintiff's claim closer to plausibility.

16

hours and also worked uncompensated time in excess of 40 hours.

1.  Wolman was "typically" scheduled to work three shifts per week, totaling 37.5 hours.  J.A. 1797.  She "occasionally" worked an additional 12.5-hour shift or worked a slightly longer shift, id., but how occasionally or how long, she does not say; nor does she say that she was denied overtime pay in any such particular week.  She alleges three types of uncompensated work: (1) 30-minute meal breaks which were "typically" missed or interrupted; (2) uncompensated time before and after her scheduled shifts, "typically" resulting in an additional 15 minutes per shift; and (3) trainings "such as" a monthly staff meeting, "typically" lasting 30 minutes, and respiratory therapy training consisting of, "on average," 10 hours per year.  Id.

She has not alleged that she ever *completely* missed *all three* meal breaks in a week, or that she also worked a full 15 minutes of uncompensated time around *every shift*; but even if she did, she would have alleged a total 39 hours and 45 minutes worked.  A monthly 30-minute staff meeting, an installment of the ten yearly hours of training, or an

17

additional or longer shift could theoretically put her over the 40-hour mark in one or another unspecified week (or weeks); but her allegations supply nothing but low-octane fuel for speculation, not the plausible claim that is required.

2. Iwasiuk "typically" worked four shifts per week, totaling 30 hours. J.A. 1799. She claims that "approximately twice a month," she worked "five to six shifts" instead of four shifts, totaling between 37.5 and 45 hours. Id. Like Wolman, Iwasiuk does not allege that she was denied overtime pay in a week where she worked these additional shifts. By way of uncompensated work, she alleges that her 30-minute meal breaks were "typically" missed or interrupted and that she worked uncompensated time before her scheduled shifts, "typically" 30 minutes, and after her scheduled shifts, "often" an additional two hours. Id. Maybe she missed *all* of her meal breaks, and *always* worked an additional 30 minutes before and two hours after her shifts, and maybe some of these labors were performed in a week when she worked more than her four shifts. But this invited speculation does not amount to a plausible claim under FLSA.

18

3. Lundy worked between 22.5 and 30 hours per week, J.A. 1800, and Plaintiffs conceded below--and do not dispute on appeal--that he never worked over 40 hours in any given week.

We therefore affirm the dismissal of Plaintiffs' FLSA overtime claims. We need not consider alternative grounds that were conscientiously explored by the district court, such as the lack of an employer-employee relationship between the named Plaintiffs and many of the Defendants, and the insufficient allegations that additional minutes, such as meal breaks, were "compensable" as a matter of law.

**III**

A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours. An employee who has not worked overtime has no claim under FLSA for hours worked below the 40-hour overtime threshold, unless the average hourly wage falls below the federal minimum wage. See United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 494 (2d Cir.

19

1960) (denying petitions for rehearing); <u>Monahan v. Cnty. of Chesterfield</u>, 95 F.3d 1263, 1280 (4th Cir. 1996) ("Logically, in pay periods without overtime, there can be no violation of section 207 which regulates overtime payment.").

Notwithstanding that Plaintiffs have failed to sufficiently allege any week in which they worked uncompensated time in excess of 40 hours, Plaintiffs invoke FLSA to seek gap-time wages for weeks in which they claim to have worked over 40 hours. The viability of such a claim has not yet been settled in this Circuit, but we now hold that FLSA does not provide for a gap-time claim even when an employee has worked overtime.

As the district court explained, the text of FLSA requires only payment of minimum wages and overtime wages. <u>See</u> 29 U.S.C. §§ 201-19. It simply does not consider or afford a recovery for gap-time hours. Our reasoning in <u>Klinghoffer</u> confirms this view: "[T]he agreement to work certain additional hours for nothing was in essence an agreement to accept a reduction in pay. So long as the reduced rate still exceeds [the minimum wage], an agreement to accept reduced pay is valid . . . ." 285 F.2d at 494.

Plaintiffs here have not alleged that they were paid below minimum wage.

So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week. See id. In this way federal law supplements the hourly employment arrangement with features that may not be guaranteed by state laws, without creating a federal remedy for all wage disputes--of which the garden variety would be for payment of hours worked in a 40-hour work week. For such claims there seems to be no lack of a state remedy, including a basic contract action. See, e.g., Point IV (discussing the New York Labor Law).

As the district court observed, some courts may allow such claims to a limited extent. Special App. 13 (citing Monahan, 95 F.3d at 1279, and other cases). Among them is the Fourth Circuit in Monahan, which relied on interpretive guidance provided by the Department of Labor. See 29 C.F.R. §§ 778.315, .317, .322. "Unlike regulations," however, "interpretations are not binding and do not have the force of law." Freeman v. Nat'l Broad. Co., 80 F.3d 78, 83 (2d Cir. 1996) (analyzing deference owed to Department of Labor

21

interpretation of FLSA).  "Thus, although they are entitled to some deference, the weight accorded a particular interpretation under the FLSA depends upon 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Id. (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

The interpretive guidance on which Monahan relied, insofar as it might be read to recognize gap-time claims under FLSA, is owed deference only to the extent it is persuasive: it is not.[8]

---

[8]  The district court identified deficiencies in the Fourth Circuit's view and expressed "serious concerns" about allowing gap-time claims under FLSA.  Special App. 15.  One judge within the Fourth Circuit has acknowledged the force of the competing view:

> While I follow the direction of Monahan and the Department of Labor regulations in this opinion, I note that one could, in the alternative, take the approach that compensation for FLSA overtime hours is the *sole* recovery available under the FLSA maximum hour provision.  This approach would leave the contractual interpretation and determination of straight time compensation to state courts, which are better positioned to address these issues.

Koelker v. Mayor & City Council of Cumberland, 599 F. Supp. 2d 624, 635 n.11 (D. Md. 2009) (Motz, J.) (emphasis in original).

22

Section 778.315 of the guidance, which considers the FLSA requirement for time-and-a-half pay, offers the following clarification: "This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) . . . has been paid." 29 C.F.R. § 778.315. This interpretation suggests that an employer could violate FLSA by failing to compensate an employee for gap time worked when the employee also works overtime; but the Department of Labor provides no statutory support or reasoned explanation for this interpretation.[9]

The Department of Labor adds, also without explanation, that "[a]n agreement not to compensate employees for certain nonovertime hours stands on no better footing since it would have the same effect of diminishing the employee's total overtime compensation." 29 C.F.R. § 778.317. This guidance seems to rely on nothing more than other (unreasoned)

[9] Section 778.322 appears to merely build from this flawed interpretation: "[O]vertime compensation cannot be said to have been paid until all straight time compensation due the employee under the statute or his employment contract has been paid." 29 C.F.R. § 778.322. Again, the Department of Labor's interpretation is not grounded in the statute and provides no reasoned explanation for this conclusion.

guidance, and directly conflicts with <u>Klinghoffer</u>, which ruled that such an agreement would not violate the limited protections of the FLSA.  285 F.2d at 494.

Accordingly, we therefore affirm the dismissal of Plaintiffs' FLSA gap-time claims.[10]

**IV**

The claims under the NYLL were dismissed with prejudice.  Plaintiffs argue that the district court lacked jurisdiction to dismiss Plaintiffs' NYLL claims because it declined to exercise supplemental jurisdiction once it dismissed the federal claims.

In the welter of amended complaints, motions to dismiss, and orders that rule and clarify, the record is somewhat confusing on this point.  The state law claims were considered generally in the February 2012 order, in which

---

[10]    Even if we were to assume that an employee who has worked overtime may also seek gap-time pay under FLSA, such a claim would not be viable if the employment agreement provided that the employee would be compensated for all non-overtime hours worked.  <u>See</u> <u>Monahan</u>, 95 F.3d at 1272.  Here, Plaintiffs allege "binding, express oral contracts" that include an "explicit promise to compensate Plaintiffs and Class Members for 'all hours worked.'"  J.A. 1819.  Of course in that event a contractual remedy may be available; but the district court dismissed the breach of contract claims and Plaintiffs have not appealed on that ground.

24

the district court "decline[d] to exercise supplemental jurisdiction over Plaintiff's state law claims," thereby dismissing them without prejudice. Special App. 69. But at the same time, the district court stated that Plaintiffs' FLSA and NYLL claims are examined under the same legal standards, and that the analysis dismissing Plaintiffs' FLSA claims "applies with equal force to Plaintiffs' NYLL claims." Id. at 47 n.4; see also id. at 61 n.8. In response to Plaintiffs' motion for partial reconsideration and clarification, the March 2012 order explained that the "NYLL claims against these Defendants were dismissed WITH PREJUDICE." Id. at 76.

The exercise of supplemental jurisdiction is within the sound discretion of the district court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988). Courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise" supplemental jurisdiction. Id. at 350. Once all federal claims have been dismissed, the balance of factors will "usual[ly]" point toward a declination. Id. at 350 n.7.

"We review the district court's decision for abuse of discretion, and depending on the precise circumstances of a case, have variously approved and disapproved the exercise of supplemental jurisdiction where all federal-law claims have been dismissed." Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal citations omitted). The dismissal of state law claims has been upheld after dismissal of the federal claims, particularly where the state law claim implicated federal interests such as preemption, or where the dismissal of the federal claims was late in the litigation, or where the state law claims involved only settled principles rather than novel issues. Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305-06 (2d Cir. 2003). And we have upheld the exercise of supplemental jurisdiction in situations when as here the "state law claims are analytically identical" to federal claims. Benn v. City of New York, 482 F. App'x 637, 639 (2d Cir. 2012); see also Petrosino v. Bell Atl., 385 F.3d 210, 220 n.11 (2d Cir. 2004).

In dismissing the NYLL claims with prejudice, the district court relied on the fact that the same standard applied to the FLSA and NYLL claims. That exercise of

26

supplemental jurisdiction was entirely consistent with this Court's precedent.[11]  Reviewing the district court's determination for an abuse of discretion, we largely affirm the district court's dismissal of the NYLL claims with prejudice.

However, Plaintiffs point out that the district court order was arguably inconsistent in dismissing Plaintiffs' NYLL claims with prejudice notwithstanding its observation that Plaintiffs may have a valid gap-time claim under NYLL.

According to the district court: "the NYLL does recognize Gap Time Claims and provides for full recovery of all unpaid straight-time wages owed."  Special App. 61 n.9 (internal quotations and citations omitted).  "Thus, to the extent that the . . . Plaintiffs have adequately pled that they worked compensable time for which they were not properly paid, Plaintiffs have a statutory right under the NYLL to recover straight-time wages for those hours."  Id.

_____

[11]  In any event, the district court's dismissal of Plaintiffs' NYLL claims was proper under the Cohill factors: judicial economy, convenience, fairness, and comity.  See 484 U.S. at 350.  Judicial economy and convenience are served by dismissing Plaintiffs' NYLL claims with prejudice. And considering that Plaintiffs amended their complaint at least four times with express guidance from the district court, they cannot argue now that it is unfair to dismiss their inadequately pleaded NYLL claims.

This observation appears consistent with NYLL, which provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she shall recover in a civil action the amount of *any such* underpayments . . . ." NYLL § 663(1) (emphasis added).

We express no view as to the merits of NYLL gap-time claims, or as to the adequacy of Plaintiffs' pleading. But because New York law may recognize Plaintiffs' NYLL gap-time claims, the district court erred in dismissing them with prejudice based solely on its dismissal of Plaintiffs' FLSA claims. We therefore affirm the dismissal of Plaintiffs' NYLL overtime claims, but vacate the dismissal of Plaintiffs' NYLL gap-time claims and remand for further consideration in that narrow respect.

**V**

Finally, Plaintiffs challenge the dismissal of their RICO claims, which alleged that CHS used the mails to defraud Plaintiffs by sending them their payroll checks. The district court dismissed the RICO claims, holding that Plaintiffs had not alleged any pattern of racketeering activity.

28

To establish a civil RICO claim, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," as well as "injury to business or property as a result of the RICO violation." Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (internal quotation marks omitted). The pattern of racketeering activity must consist of two or more predicate acts of racketeering. 18 U.S.C. § 1961(5).

The Third Amended Complaint cites the mailing of "misleading payroll checks" to show mail fraud as a RICO predicate act, J.A. 1779, on the theory that the mailings "deliberately concealed from its employees that they did not receive compensation for all compensable work that they performed and misled them into believing that they were being paid properly." Id. at 1764-65; see also id. at 1765-67 (describing the mailing of checks).[12]

"To prove a violation of the mail fraud statute, plaintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme."

---

[12] Federal courts are properly wary of transforming any civil FLSA violation into a RICO case. See, e.g., Vandermark v. City of New York, 615 F. Supp. 2d 196, 209-10 (S.D.N.Y. 2009) (Scheindlin, J.) ("Racketeering is far more than simple illegality. Alleged civil violations of the FLSA do not amount to racketeering.").

McLaughlin v. Anderson, 962 F.2d 187, 190-91 (2d Cir. 1992). On a motion to dismiss a RICO claim, Plaintiffs' allegations must also satisfy the requirement that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see McLaughlin, 962 F.2d at 191. So Plaintiffs must plead the alleged mail fraud with particularity, and establish that the mailings were in furtherance of a fraudulent scheme. Id. Plaintiffs' allegations fail on both accounts.

As to particularity, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989). Plaintiffs here have not alleged what any particular Defendant did to advance the RICO scheme. Nor have they otherwise pled particular details regarding the alleged fraudulent mailings. Bare-bones allegations do not satisfy Rule 9(b).

30

Almost more fundamentally, Plaintiffs have not established that the mailings were "in furtherance" of any fraudulent scheme.  As the district court observed, the mailing of pay stubs cannot further the fraudulent scheme because the pay stubs would have revealed (not concealed) that Plaintiffs were not being paid for all of their alleged compensable overtime.  See Special App. 16-17.  Mailings that thus "increase[] the probability that [the mailer] would be detected and apprehended" do not constitute mail fraud.  United States v. Maze, 414 U.S. 395, 403 (1974); see also Cavallaro v. UMass Mem'l Health Care Inc., No. 09-40152, 2010 WL 3609535, at *3 (D. Mass. July 2, 2010) (examining very similar claim of mail fraud based on paychecks and ruling that the mailings "made the scheme's discovery more likely").  We therefore affirm the dismissal of Plaintiffs' RICO claims.

## CONCLUSION

For the foregoing reasons, we affirm the dismissal of Plaintiffs' claims under FLSA, their NYLL overtime claims, and their RICO claims, but we vacate the dismissal with prejudice of Plaintiffs' gap-time claims under the NYLL, and remand for further consideration in that limited respect.

31