RENDERED: APRIL 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1055-MR

MARTHA MARTINEZ												APPELLANT

v.					APPEAL FROM WARREN CIRCUIT COURT
					HONORABLE STEVE ALAN WILSON, JUDGE
					ACTION NO. 19-CI-00568

JB ELECTRIC, LLC; and
JB BRIDGEMAN												APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, KRAMER, AND MAZE, JUDGES.

KRAMER, JUDGE: Martha Martinez appeals a July 28, 2020 order of the Warren Circuit Court which summarily dismissed her wage and hour, breach of contract, and retaliatory termination claims she asserted against her former employer, appellee JB Electric, LLC, and her former supervisor and the owner of that

company, appellee JB Bridgeman (collectively "JB Electric"). Upon review, we affirm.

Most of the relevant facts, procedural history, and legal issues relevant to this appeal are set forth in the circuit court's well-written summary judgment order. In relevant part, it provides:

> Plaintiff, Martha Martinez, is a former employee of JB Electric, LLC. In 2015, JB Bridgeman, owner of JB Electric, hired Martha Martinez to be the office manager. Plaintiff says she worked from 7:30 a.m. to 4:30 p.m., Monday through Friday, and sometimes on Saturday. Plaintiff worked throughout the nine hours. If Plaintiff went to lunch, she says she was required to take her company phone or laptop in order to work through her lunch break. Plaintiff alleges that she is entitled to unpaid wages for her work during her lunch break, in the principal amount of five hours per week, times her hourly rate, times 52 weeks per year, throughout the course of her employment with JB Electric from 2015 to 2019. In September 2018, Plaintiff requested a raise.
>
> Plaintiff claims that Defendants violated certain provisions of the Kentucky Wages and Hours Act, and Plaintiff suffered a monetary loss as a result of this violation. KRS[1] 337.060; KRS 337.385. Plaintiff further claims that, when she brought the issue of her unpaid wages to the attention of her employer, she was terminated in retaliation. Plaintiff claims that this termination also violated the Kentucky Civil Rights Act. Plaintiff claims that JB Electric breached its contract with Plaintiff when it contracted to pay her at an hourly rate for every hour she worked, but only paid her for forty hours when she worked forty-five hours.

---

[1] Kentucky Revised Statute.

Defendant moved for summary judgment on these claims. Defendant asserts that Martinez is not an employee under KRS 337, and therefore not entitled to protection under the statute. Additionally, Defendant emphasizes that no claim for retaliatory termination based on gender or race exists because Plaintiff did not engage in protected activity.

Plaintiff is not an employee under the statute, and, therefore, Plaintiff is not entitled to overtime wages. KRS 337.010; KRS 337.385. KRS 337.010(2)(a)(2) excludes from the definition of an employee "any individual employed in a bona fide executive, administrative, supervisory, or professional capacity, or in the capacity of an outside salesman, or as an outside collector as the terms are defined by administrative regulations of the commissioner." The administrative regulations define "an individual employed in a bona fide administrative capacity" as an employee 1) compensated on a salary or fee basis at a rate of not less than $455 per week, 2) whose primary duty is the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers, and 3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 803 KAR[2] 1:070. Plaintiff bears the burden of proving she is an employee. *City of Louisville, Div. of Fire Serv. Managers Ass'n by & through Kaelin*, 212 S.W.3d 89, 95-96 (Ky. 2006).

Plaintiff was the sole office manager and described her role with JB Electric as beyond that of an ordinary secretary or clerical worker. She acknowledged that her responsibilities were directly related to the business operations of JB Electric, and said she was "in charge of the general business operations." Plaintiff said she prepared bank deposits, answered phones, scheduled

---

[2] Kentucky Administrative Regulation.

electricians and technicians, invoiced customers and contractors, prepared bills, scheduled city and county inspections, filed and signed permits on behalf of the company, and was responsible for delivery of parts to technicians. Plaintiff admitted that these tasks were significant and affected the business operations to a substantial degree. Plaintiff conceded that she used her discretion and judgment, and specifically cited her discretion in creating marketing content.

The parties agree that Plaintiff received over $455 a week in compensation, that her work was related to general business operations, and that her work included the exercise of discretion. However, Plaintiff argues that she was paid on an hourly, rather than salaried basis. As compensation for her work, Plaintiff received $680 a week from 2015 to 2016. In November 2016, Plaintiff received a raise to $720 a week. Plaintiff does not deny that she was paid in the exact same amount weekly. She never submitted time sheets or hours worked to anyone until 2018 when she decided to begin inputting her time in QuickBooks. Aside from her assumptions, Plaintiff has provided no proof that she is hourly. The record shows that Plaintiff was paid a salary. Plaintiff has not proven that she is an employee under KRS 337. Therefore, she is not entitled to unpaid wages.

Plaintiff cannot sustain an action for retaliatory termination under KRS 337.990(9). When asked if she had reported any wage and hour issue, Plaintiff admitted that she "just asked for a raise" because she was taking on more responsibility. Plaintiff did not engage in any action or complaint about her wages. It is impossible for her to be retaliated against for something she did not do.

Plaintiff has failed to show that she faced discrimination at JB Electric, or that she was retaliated against for complaining about discrimination. To establish retaliation, the plaintiff must show: (1) that he was engaged in a protected activity, (2) that he was subjected

-4-

to adverse treatment by his employer, and (3) that there was a causal connection between the activity engaged in and the employer's treatment of him. *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 133-34 (Ky. 2003). A person engages in protected activity when he makes a charge, files a complaint, testifies, assists, or participates in any manner in any investigation under KRS 344. KRS 344.280. Plaintiff never filed a charge of discrimination with the Kentucky Human Rights Commission, made an inquiry with KHRC, nor voiced a complaint to anyone at JB Electric regarding discrimination. Since Plaintiff did not take such action, her termination could not have been a retaliation.

Nothing in the record indicates that Defendant breached its contract with Plaintiff. The facts show that Plaintiff was a salaried employee. Plaintiff's employment did not require JB Electric to pay her based on her hours worked. Defendant paid Plaintiff for her work in accordance with their agreement.

Following Plaintiff's deposition, there is no genuine issue as to any material fact, and Defendants are entitled to summary judgment. Under KRS 337, Martinez is a bona fide administrative employee, so she is exempt from the protections of the statute and is not entitled to unpaid wages. Because she was a salaried employee and never filed a charge or complained of unpaid wages or discrimination, Plaintiff cannot sustain a claim of retaliation or breach of contract.

On appeal, Martinez asserts the circuit court erred in summarily dismissing her claims. We will discuss additional facts relevant to her claims over the course of our analysis.

When a trial court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are

-5-

involved.  *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR[3] 56.03.  The movants bear the initial burden of demonstrating that there is no genuine issue of material fact in dispute.  The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial."  *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991).

A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings.  *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.*, 281 S.W.2d 914 (Ky. 1955).  "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and . . . the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation."  *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).  On appeal, we must consider the evidence of record in the light most favorable to the non-movant (*i.e.*,

---

[3] Kentucky Rule of Civil Procedure.

Martinez) and must further consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving parties were entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

As indicated, the circuit court dismissed Martinez's KRS 337.385 wage and hour claim against JB Electric after determining there was no genuine dispute in the evidence that Martinez's employment with JB Electric had been in a "bona fide administrative capacity" within the meaning of KRS 337.010(2)(a)2. And, an individual works in a "bona fide administrative capacity," and thus cannot assert a claim under KRS 337.385, if, pursuant to 803 KAR 1:070 Section 3, they are:

> (a) Compensated on a salary or fee basis at a rate of not less than $455 per week, exclusive of board, lodging, or other facilities;
>
> (b) Whose primary duty is the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (c) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

With that said, Martinez does not contest that her employment with JB Electric satisfied factors "(b)" and "(c)," set forth above. Regarding factor "(a)," she likewise does not contest that she was compensated more than $455 per week

at all relevant times.  Rather, her sole contention is that per factor "(a)," she was not compensated on "salary basis."

The term "salary basis" is an administrative term of art, defined in 803 KAR 1:070 Section 10, which provides in relevant part:

> (1)(a) An employee will be considered to be paid "on a salary basis" within the meaning of this administrative regulation if the employee regularly receives each pay period on a weekly, or less frequent basis, a *predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.*  Subject to the exceptions in subsection 2 of this section, the employee shall receive his or her full salary for any week in which the employee performs any work *without regard to the number of days or hour worked*.  Exempt employees need not be paid for any workweek in which they perform no work.
>
> (b) An employee shall not be considered to be "on a salary basis" if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.  Accordingly, if the employee is ready, willing and able to work, deductions shall not be made for time when work is not available.

(Emphasis added.)

As the plaintiff in this wage and hour claim, Martinez had the burden to prove she was *not*[4] an exempt employee.  *City of Louisville, Div. of Fire v. Fire*

---

[4] As explained in *Kaelin*, KRS Chapter 337 is Kentucky's analogue to the Fair Labor Standards Act (FLSA), 29 United States Code §§ 201-219, but it differs from the FLSA concerning the burden of proof:  under the FLSA, whether an employee is "exempt" is considered an affirmative

*Service Managers Ass'n ex rel. Kaelin*, 212 S.W.3d 89, 94-95 (Ky. 2006). Part of

that burden required Martinez to demonstrate she was *not* salaried. And, as

explained in *Kaelin*, the appropriate metric for doing so is the "salary-basis test,"

which, as adopted by our Supreme Court, places the onus upon the plaintiff to

demonstrate they were "covered by a policy that permits disciplinary or other

deductions in pay 'as a practical matter.' That standard is met . . . if there is either

an actual practice of making such deductions or an employment policy that creates

a 'significant likelihood' of such deductions." *Id*. at 96 (quoting *Auer v. Robbins*,

519 U.S. 452, 461, 117 S. Ct. 905, 911, 137 L. Ed. 2d 79 (1997)).

Here, nothing of record demonstrates there was any practice at JB

Electric of *actually* making deductions from Martinez's weekly pay. As the circuit

court observed, during her roughly four years of employment with the company,

Martinez was consistently paid $680 per week until November 2016; and she was

paid at least $720 per week until the date of her termination in February 2019.

Boiled down, Martinez's argument is, rather, that she sufficiently

adduced evidence demonstrating her pay was subject to an employment policy that

allowed for a deduction in her weekly pay. To that end, she asserts her weekly

wage was not "predetermined," but was instead dependent upon the number of

days or hours she worked. Martinez points to the fact that JB Electric's employee

---

defense for an employer to prove; whereas, under KRS Chapter 337, an employee is required to prove they are not "exempt" as part of their *prima facie* case. *See Kaelin*, 212 S.W.3d at 94-95.

handbook provides in relevant part, "When hired unless told otherwise, you are a full-time employee working 40 hours per week (M-F 7:30am – 3:30pm)." She notes that no salary-type arrangement was ever memorialized in writing with her and that she was never told that her employment was subject to such an arrangement. She also points to her deposition in this matter. There, she testified about her interview with Bridgeman immediately prior to when he hired her in 2015. Regarding the subject of her compensation, she recalled telling him that she "worked hourly." She continued, "And I said – and anyway, he said, 'And your pay' – and I said, 'I make $17 an hour where I'm at.' And he said, 'That will be fine.'"[5]

Additionally, some evidence demonstrates, at least on paper, that Martinez was paid either seventeen or eighteen dollars per hour, for forty hours of work each week. To review, Martinez was paid $680 per week until November 2016; and, there is no dispute that until November 2016, Bridgeman calculated her per-week compensation by multiplying seventeen dollars by forty. Furthermore, Bridgeman admitted that when he gave Martinez a raise and began paying Martinez $720 per week beginning in November 2016, he calculated that sum by

_____

[5] For what it is worth, JB Electric disagrees with Martinez's characterization of how she was compensated. It notes Bridgeman testified in the course of *his* deposition that, according to his recollection of his employment interview of Martinez in 2015, he merely promised to pay Martinez the "equivalent" of seventeen dollars per hour, or "forty hours or forty times seventeen dollars for a weekly amount," an amount he believed – but concededly did not tell Martinez he believed – was the equivalent of a salary.

-10-

multiplying eighteen dollars by forty. Likewise, JB Electric produced its records of what it paid Martinez on a weekly basis – including the receipts of what it directly deposited into her bank account – dating back to May 31, 2017. Those records indicate that "40.00," according to JB Electric, consistently represented Martinez's "regular hours" worked per week; that she was paid at a "rate" of "18.00"; and that with one exception,[6] Martinez worked forty hours per week until February 22, 2019, the date of her termination.

Incidentally, stating that Martinez worked at least forty hours per week during every week of her employment with JB Electric is not hyperbole: not only is it exactly what Martinez's payroll records reflect, but it is also consistent with her unrefuted testimony that she never took any time off work during her employment. Indeed, JB Electric had no record of Martinez ever taking time off work; and Bridgeman testified he had no recollection of her ever doing so. Thus, *at least on paper*, this is not inconsistent with the notion that Martinez received an hourly wage from JB Electric, as opposed to a salary. *See* 803 KAR 1:070 Section 10(1)(a) (explaining "the employee shall receive his or her full salary for any week

---

[6] JB Electric's records indicate that in the one instance where Martinez was credited for working more than forty hours in a given workweek (*i.e.*, during the week of October 22 through October 28, 2018, she was noted as having worked forty-five hours), Martinez was paid "overtime" at a rate of twenty-seven dollars per hour for the additional five hours. JB Electric, for its part, notes that Bridgeman testified he believed that when Martinez was paid for five hours of overtime for the week of October 22 through 28, 2018, it was the unintended result of his "mess-up." Ultimately, however, this point is irrelevant. The ability of an otherwise exempt employee to accrue overtime for hours worked in excess of their regularly scheduled shifts has no bearing upon their salaried status. *See Kaelin*, 212 S.W.3d at 97.

in which the employee performs any work without regard to the number of days or hour worked.").

In short, the evidence, taken in the light most favorable to Martinez, supports that JB Electric had an employment policy that *might have allowed* for Martinez's weekly pay to be reduced based upon the number of days or hours she worked.

But, that is not enough. The applicable standard is whether JB Electric's employment policy created a *significant likelihood* of such deductions. *Kaelin*, 212 S.W.3d at 96. "Actual practice" is of "seminal importance." *Id.* Thus, regardless of whether JB Electric's policy *might* have allowed for Martinez's weekly pay to be reduced based upon the number of days or hours she worked, the issue is the level of attention JB Electric gave to that policy in the context of her employment. *See id.* at 98 ("nonenforcement of an existing policy may actually support an employer's claim that its employees are salaried." (citation omitted)).

With that in mind, JB Electric contends, as it did below, that *if* it had any such policy with respect to Martinez, its policy was, *in practice*, never enforced and wholly ignored. In its brief, JB Electric argues:

> Although Martinez may contend that the parties never memorialized the salary arrangement, such a fact is inconsequential given the actual course of conduct of the parties for four years. It is difficult to grasp how someone could refute the fact they were a salaried employee when they were not required to keep track of

their time for over three years and yet were paid a consistent weekly sum each and every week.

We agree. To be sure, Martinez's payroll records and unrebutted testimony reflect that she never took any time off work during her employment and that she worked forty hours per week. What is dispositive, however, is the undisputed fact – as indicated by the circuit court in its own review of this matter – that JB Electric *never monitored the hours Martinez worked*. Indeed, JB Electric never asked Martinez to submit timesheets. Martinez never submitted timesheets or hours worked to anyone until 2018, when she decided, on her own volition, to begin inputting her time in QuickBooks.[7] Martinez never asked to audit or review how JD Electric was completing timesheets on her behalf; nor did she ask to be paid for any hours in excess of forty per week during her tenure with JB Electric – despite her present claim that she *always*[8] worked forty-five hours each week. And Bridgeman, who completed and approved each of Martinez's timesheets during her tenure with JB Electric, testified – unsurprisingly – that he did so without ever

_____

[7] JB Electric never approved or otherwise adopted any of the timesheets Martinez completed.

[8] Whether Martinez adduced mere speculation regarding whether she worked during her lunch hours, as opposed to evidence, was never a point raised or addressed below. As *dicta*, however, we emphasize Martinez testified in her deposition that while she "answered the phone all the time," she never kept track of the time she spent on the phone during her lunch hour; and, she acknowledged, "There's no way for us to know how much time [she] spent on the phone on any given day." As indicated, KRS Chapter 337 is interpreted consistently with the FSLA; and, in the words of one Court applying the FSLA – and analyzing roughly the equivalent of what Martinez adduced – this is "nothing but low-octane fuel for speculation, not the plausible claim that is required." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2nd Cir. 2013).

-13-

consulting with Martinez or knowing how many hours she actually worked each week.

Based upon this undisputed, mutually understood, and continuing course of conduct between Martinez and JB Electric, it cannot be said that Martinez adduced affirmative evidence indicating JB Electric's employment policy regarding Martinez – a practice that entailed no monitoring of her time at all – created a *significant likelihood* that her weekly pay would be reduced based upon the amount of time she worked. Martinez accordingly failed to support that she was not paid on a salary basis and, therefore, was not an exempt employee (*i.e.*, employed in a "bona fide administrative capacity"). Summary judgment was appropriate in this respect.

Next, Martinez argues the circuit court erred in dismissing her breach of contract claim against JB Electric. However, to the extent that she addresses this issue in her brief, she does so only by contending, once again, that the circuit court erred in determining she was paid on a salary basis. Having already determined the circuit court committed no error in that regard, we affirm in this respect as well.

Lastly, Martinez asserts the circuit court erred in dismissing her retaliation claims set forth above, which she asserted pursuant to KRS 337.990(9) and KRS Chapter 344. She argues, "There was no question that JB fired [her] for

her assertion of these claims, and whether her beliefs were reasonable or in good faith should have been a question for the jury." And, regarding what she believes supported her claims, she points to two pages of Bridgeman's deposition, in which he testified:

COUNSEL: Tell me why it is that J.B. Electric and Martha Martinez had a parting of the ways.

BRIDGEMAN: Long story or short story?

COUNSEL: Long story.

BRIDGEMAN: Okay, long story. It won't be that long. At the end of the round I started getting talked to by my employees, which Ryan Thomas was one of them, Jimmy Kirby was another one. They stopped me at my house and told me they're scared to death that something's going to happen to our company because she's been talking about suing me and also said that she was trying – going to try to get me for other things other than this, so.

COUNSEL: Ryan Thomas told you that?

BRIDGEMAN: Yes.

COUNSEL: Mr. Kirby told you that?

BRIDGEMAN: Yes.

COUNSEL: What was she going to sue you for?

BRIDGEMAN: I think they were saying for pay, of course.

COUNSEL: Wage and hour?

BRIDGEMAN: And also for – I think that he said that she was going to try to get me for sexist and racism because she's Spanish. That's about it.

COUNSEL: Who told you that?

BRIDGEMAN: Jimmy and Ryan both were – met me, pulled me off to the side and told me all this.

COUNSEL: They told you that Martha was going to sue you for race discrimination?

BRIDGEMAN: Yes, sir.

COUNSEL: And tell me exactly what you remember about that.

BRIDGEMAN: That was about it. I mean they're like, "We're scared to death. We don't want her to do anything to our company. She's already talked to a couple of lawyers" and blah blah blah, this this this, and "she's going to sue you because she – because of the wages and she thinks she could get something because she's a minority and a woman."

COUNSEL: Anybody else tell you that?

BRIDGEMAN: No.

COUNSEL: Did you know that Martha Martinez was a woman when you hired her?

BRIDGEMAN: Yes, I did.

COUNSEL: Did you know that she was Hispanic?

BRIDGEMAN: No, I did not.

COUNSEL: Did you ever –

BRIDGEMAN:  But it doesn't matter.

COUNSEL:  Did you ever discriminate against her or –

BRIDGEMAN:  No, not to my knowledge.

COUNSEL:  – or have any reason to discriminate against her because of her race or –

BRIDGEMAN:  Uh-uh.

COUNSEL:  – or her gender?

BRIDGEMAN:  No, sir.

COUNSEL:  Did Martha ever talk to you about having been discriminated against because of her race or gender?

BRIDGEMAN:  No, not to me.  Not to me, no.

COUNSEL:  Do you know – do you know if she ever talked to anybody at all about being discriminated against because of her race or gender?

BRIDGEMAN:  Not while she was around me, so not that I know of.

COUNSEL:  Are you representing to me that Martha Martinez told Mr. Kirby or Mr. Thomas that she was going to bring some race or – or gender discrimination claim?

BRIDGEMAN:  I'm saying that's what they told me, yes.

COUNSEL:  They told you that she told them that?

BRIDGEMAN:  Yes.

COUNSEL:  Okay.  Did you fire Martha Martinez because she brought this wage and hour issue to your attention?

BRIDGEMAN:  No.

COUNSEL:  Why did you fire her?

BRIDGEMAN:  Because I – because of the other things, because they said that they were – that what they said was going to do to my company, so I had to – I didn't think it was – I think it was just time to get rid of her.

COUNSEL:  Did you ask Martha Martinez about these allegations of –

BRIDGEMAN:  Yes, I did.

COUNSEL:  – of race or gender discrimination before you –

BRIDGEMAN:  Yes.  Sorry.

COUNSEL:  – before you fired her?

BRIDGEMAN:  Yes, at the time.

COUNSEL:  Tell me what you –

BRIDGEMAN:  At the same time I fired her I asked her this first.  Yes.

COUNSEL:  Tell me what you remember about that.

BRIDGEMAN:  That I was – I mean I just asked her, "Did you talk to them and ask – and tell them that you were suing me and that there was issues about" –

COUNSEL:  Suing you for what?

-18-

BRIDGEMAN:  Well, that's what – that's what I told – that's what I asked her.

COUNSEL:  Suing you for wage and hour –

BRIDGEMAN:  For wage and hour and for being sexist and racist.

COUNSEL: Okay.  So did you terminate her for bringing this wage and hour violation to your attention?

BRIDGMAN'S COUNSEL:  Objection.

BRIDGEMAN:  That was the smallest thing to do, and it was time for her to leave anyway.

COUNSEL:  Why?

BRIDGEMAN:  Well, because she, like I said, she was good at some things but other things she just wasn't – wasn't on par with, so.

In sum, Bridgeman testified that two of his other employees – Thomas and Kirby – had informed him of hearsay, telling him they had overheard Martinez threatening to sue JB Electric for "pay" and "for sexist and racism because she's Spanish."  Bridgeman also testified Thomas and Kirby were the *only* individuals who told him that; and that Martinez had never voiced any complaint to him in those respects.  Also, in response to Martinez's counsel's question, "did you terminate her for bringing this wage and hour violation to your attention?" Bridgeman testified, "That was the smallest thing to do, and it was time for her to leave anyway."

-19-

Martinez similarly proffered no evidence that she was discriminated against based upon gender or that she made any complaint to that effect. When asked during her deposition, "Did you tell anybody that you believed you were being discriminated against because of [her] ethnicity?" she answered "No," and did not proffer any evidence indicating she was discriminated against in that respect, either. Moreover, despite her counsel's frequent use of the legal terms "wage and hour issue" and "wage and hour violation" throughout their respective depositions, Martinez and Bridgeman both testified that the substance of the "wage and hour" claim Martinez asserted in this litigation – that JB Electric had failed to appropriately pay her for being "on-call" during her lunch hour each day – had never been discussed and had thus played no role in her termination. Rather, their discussions concerning her "wages and hours," prior to her termination, were limited to Martinez's request for a "raise" for "taking on more responsibility."

Vague complaints are insufficient to constitute opposition to an unlawful employment practice. *See Fox v. Eagle Distributing Co., Inc.,* 510 F.3d 587, 591 (6th Cir. 2007) (quoting *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989)). Considering that, we find no error in the circuit court's decision to dismiss Martinez's retaliation claims. Accordingly, we restate and adopt the circuit court's analysis in that respect:

> Plaintiff cannot sustain an action for retaliatory
> termination under KRS 337.990(9). When asked if she

had reported any wage and hour issue, Plaintiff admitted that she "just asked for a raise" because she was taking on more responsibility. Plaintiff did not engage in any action or complaint about her wages. It is impossible for her to be retaliated against for something she did not do.

Plaintiff has failed to show that she faced discrimination at JB Electric, or that she was retaliated against for complaining about discrimination. To establish retaliation, the plaintiff must show: (1) that he was engaged in a protected activity, (2) that he was subjected to adverse treatment by his employer, and (3) that there was a causal connection between the activity engaged in and the employer's treatment of him. *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 133-34 (Ky. 2003). A person engages in protected activity when he makes a charge, files a complaint, testifies, assists, or participates in any manner in any investigation under KRS 344. KRS 344.280. Plaintiff never filed a charge of discrimination with the Kentucky Human Rights Commission, made an inquiry with KHRC, nor voiced a complaint to anyone at JB Electric regarding discrimination. Since Plaintiff did not take such action, her termination could not have been a retaliation.

In conclusion, Martinez's appellate arguments demonstrate nothing indicative of error. We therefore AFFIRM.


ALL CONCUR.



BRIEFS FOR APPELLANT:  BRIEF FOR APPELLEES:

Matthew J. Baker     T. Brian Lowder
Bowling Green, Kentucky  Bowling Green, Kentucky